United States District Court
Southern District of Texas
**ENTERED**
January 25, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00252 |
| | § | |
| ANDREW NINO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendants violated his Eighth Amendment rights in several respects, his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), the Rehabilitation Act (RA), 29 U.S.C. § 794, and the conspiracy laws under 42 U.S.C. §§ 1983, 1985, and 1986.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

The undersigned recommends that Plaintiff's § 1983, § 1985, § 1986, ADA, and RA claims against Defendants be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief can be granted.  The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1]  Plaintiff has already accumulated at least three strikes for filing frivolous lawsuits.  *See Thomas v. Sanchez*, No. 2:22-cv-129 (S.D. Tex. Nov. 17, 2022) (order of dismissal assessing strike); *Thomas v. Carter*, No. 2:22-cv-133 (S.D. Tex. Oct. 31, 2022) (order of dismissal assessing strike); *Thomas v. Trevino*, No. 2:22-cv-157 (S.D. Tex. Dec. 15, 2022) (order of dismissal assessing strike).  Plaintiff has two cases pending with recommendations for additional strikes.  *See Thomas v. Samuel*, No. 2:22-cv-158 (S.D. Tex. Dec. 7, 2022) (M&R recommending dismissal assessing strike); *Thomas* v. *Anciso*, No. 2:22-cv-254 (S.D. Tex. Jan. 5, 2023) (M&R recommending dismissal assessing strike).  Because he has accumulated three strikes, Plaintiff is prohibited from bringing any further actions or appeals *in forma pauperis* while he is incarcerated or detained in any facility unless he is under imminent danger of serious

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. *Background.*

#### 1. *Plaintiff's present § 1983 action.*

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas.  Beeville is in Bee County, which lies within the Southern District of Texas.  *See* 28 U.S.C. § 124(b)(6).

In this action, Plaintiff sues the following defendants: (1) Captain Andrew Nino ("Captain Nino"); (2) Sergeant Gage Rivas ("Sergeant Rivas"); (3) Officer Matthew Herrera ("Officer Herrera"); (4) Warden Elbert Holmes ("Warden Holmes"); (5) Dr. Isaac Kwarteng ("Dr. Kwarteng"); and (6) Bryan Collier, the Executive Director of the Texas Department of Criminal Justice (TDCJ) ("Director Collier").  (Doc. No. 1, pp. 1, 7.)  Plaintiff generally claims that his Eighth Amendment, § 1985, § 1985, and ADA and RA rights were violated in connection with the tight application of rear handcuffs on him.  (Doc. No. 1-1.)  Plaintiff seeks monetary relief. (Doc. No. 1, p. 8; Doc. No. 9, p. 12.)

#### 2. *Plaintiff's complaint and more definite statement.*

As directed by the Court, Plaintiff supplemented his complaint by filing a more definite statement to explain his claims in more detail.  (Doc. No. 9.)  The following representations were made in either Plaintiff's complaint (Doc. No. 1) or his more definite statement (Doc. No. 9).

---

injury.  *See* 28 U.S.C. § 1915(g).  However, this case was filed before Plaintiff accumulated his third strike, so the undersigned has conducted traditional PLRA screening.

Plaintiff states that he is 50 years old.  (Doc. No. 9, p.1.)  He is 6 feet tall and weighs 214 pounds.  *Id.*  Plaintiff arrived at the McConnell Unit on October 1, 2021.  *Id.*  Plaintiff alleges that he suffers from the following disabilities: a "lateral pelvic tilt;" "Chronic Pain Syndrome;" diabetes; and arthritis.  *Id.*  Plaintiff describes his lateral pelvic tilt as caused by what he calls a "leg-length discrepancy."  *Id.*  Plaintiff states that he was diagnosed with "Regional Complex Chronic Pain Syndrome in 2018 by a free-world doctor."  *Id.* at 2.  Plaintiff alleges that Dr. Kwarteng learned about Plaintiff's physical disabilities in November 2021.  *Id.* at 10.

According to Plaintiff, his disabilities caused him to be bedridden daily to prevent swelling in his lower left leg.  (Doc. No. 9, p. 2.)  Plaintiff's left leg allegedly must be elevated above his heart up to 18 hours daily to prevent swelling and pain.  *Id.*  Plaintiff's swelling, combined with diabetes, led to extreme pain in his lower extremity.  *Id.*  Plaintiff's alleged lateral pelvic tilt caused pain in various parts of his body due to untreated bunions and calloses.  *Id.*

Plaintiff alleges that his disabilities are impacted when he is handcuffed in the rear of his body rather than in the front; this "rear-cuffing," he says, causes pain in in his lower neck, shoulder, back, and hip because of his lateral pelvic tilt.  (Doc. No. 9, p. 2.)  On a scale from one to ten, with ten being the most severe pain imaginable, Plaintiff states that his pain level is a nine when he is rear-cuffed.  *Id.*  Plaintiff prefers to be handcuffed in the front with a belt, stating that this would prevent unnecessary pain.  *Id.*

On June 24, 2022, Plaintiff's medical pass to be cuffed in front expired after being in effect for one year.  (Doc. No. 9, p. 4.)  Before July 28, 2022, unidentified prison officials engaged in several discussions as to whether to rear cuff Plaintiff without a medical pass.  *Id.* at 3.  It was decided through these discussions that Plaintiff would be rear-cuffed.  *Id.*  After Plaintiff's medical pass expired, Plaintiff allegedly submitted several sick call requests and

grievances in late June 2022, seeking renewal of his medical pass from Dr. Kwarteng.  *Id.* at 4,

10.  Dr. Kwarteng allegedly did not respond until July 29, 2022, and at that time provided an

updated medical pass for "No short cuffs behind back."  *Id.* at 4, 10-11.

On July 28, 2022, one day before his medical pass was renewed, Officer Herrera

allegedly applied rear cuffs on Plaintiff when escorting Plaintiff to the McConnell Unit's diabetic

clinic.  (Doc. No. 9, p. 3.)  Plaintiff did not know who ordered Officer Herrera to rear-cuff

Plaintiff that day.  *Id.* at 4.  Before Officer Herrera applied the rear cuffs and while they were in

use, Plaintiff alleges that he placed Officer Herrera on notice that the rear cuffs caused Plaintiff

pain.  *Id.* at 3.  On a previous occasion, Plaintiff had told Officer Herrera and other officials

about his lateral pelvic tilt and "Chronic Pain Syndrome."  *Id.*  Plaintiff again communicated

these matters involving his medical conditions to Officer Herrera while being rear-cuffed on July

28.  *Id.*  Officer Herrera, Plaintiff alleges, responded that a medical pass was required to

accommodate Plaintiff's physical disabilities.  *Id.*

While being escorted to the diabetic clinic on July 28, Plaintiff allegedly fell to the

ground in severe pain due to application of the rear cuffs by Officer Herrera.  (Doc. No. 9, p. 6.)

Captain Nino and Sergeant Rivas arrived at the scene shortly after Plaintiff fell to the ground.  *Id.*

at 6, 8.  Plaintiff states that he informed Sergeant Rivas that the rear cuffs were causing him

extreme pain over his body.  *Id.* at 8.  After seeing Plaintiff in extreme pain, Captain Nino

allegedly ordered Plaintiff either to: (1) get up and walk while rear-cuffed; or (2) get a

wheelchair but remain in his current custody level with a disciplinary action brought against him.

*Id.* at 6.  Plaintiff states that he chose the first option.  *Id.*

According to Plaintiff, Captain Nino had been placed on notice in early January 2022

regarding Plaintiff's physical disabilities during an unrelated disciplinary hearing.  (Doc. No. 9,

p. 7.)  Plaintiff had discussed with Captain Nino at that time his lateral pelvic tilt and "Chronic Pain Syndrome."  *Id.*  Plaintiff alleges that Sergeant Rivas was placed on notice about these physical disabilities well before July 28, 2022, due to Plaintiff's belief those alleged "disabilities are open, obvious[,] and apparent."  *Id.* at 8.

As a result of being rear cuffed by Plaintiff on July 28, 2022, "Plaintiff sustained injuries to the wrist due to tight cuffs, severe hip, shoulder, lower neck pain, back and knee pain due to bending to have the rear-cuffs applied inside [his] cell."  (Doc. No. 9, p. 4.)  Plaintiff alleges that his injuries from the rear-cuffing required medical treatment for ligature impressions on both wrists that caused severe numbness.  *Id.*  As a result, Plaintiff was unable to write for several days due to nerve pain and "excess pain" to his lower neck, shoulder, back, hip, and knee.  *Id.* Plaintiff, however, states that he did not receive any medical treatment despite submitting several sick call requests.  *Id.*

Plaintiff claims that Officer Herrera violated his Eighth Amendment rights by causing him unnecessary pain and suffering through the application of rear cuffs on July 28, 2022.  (Doc. No. 9, p. 5.)  According to Plaintiff, Officer Herrera ignored his complaint that the rear cuffs were too tight.  *Id.*  Plaintiff further claims that Officer Herrera violated his Eighth Amendment rights by interfering "with treatment once prescribed, namely Diabetic Clinic services or insulin."  *Id.*  With respect to his Eighth Amendment claim, Plaintiff sues Officer Herrera in his individual capacity.  *Id.* at 6.

Plaintiff also claims that Officer Herrera violated his ADA and RA rights by discriminating against him solely by reason of his disabilities and failing to make a reasonable accommodation in the form of Plaintiff's requested front cuff with a belt, notwithstanding the fact a medical pass was not in place.  (Doc. No. 9, p. 5.)  According to Plaintiff, Officer

Herrera's actions denied Plaintiff access to the diabetic clinic that day.  *Id.*  With respect to his ADA and RA claim, Plaintiff sues Officer Herrera in his individual capacity.  *Id.* at 6.

Plaintiff claims that Captain Nino and Sergeant Rivas violated his Eighth Amendment rights by interfering with his diabetes treatment of insulin injections to be received at the diabetic clinic that day, causing him to experience hyperglycemia.  (Doc. No. 9, pp. 7, 9.)  Plaintiff sues Captain Nino and Sergeant Rivas under a theory of bystander liability with regard to Officer Herrera's excessively tight rear-cuffing of Plaintiff's hands.  *Id.*  With respect to his Eighth Amendment claims, Plaintiff sues Captain Nino and Sergeant Rivas in their individual capacities.  *Id.* at 8-9.

Plaintiff also claims that Captain Nino and Sergeant Rivas violated his ADA and RA rights by intentionally discriminating against him solely by reasons of his physical disabilities in denying him access to the diabetic clinic and by failing to make a reasonable accommodation in the form of Plaintiff's requested front cuff with a belt.  *Id.* at 7, 9.  With respect to his ADA and RA claim, Plaintiff sues Captain Nino and Sergeant Rivas in their official capacities.  *Id.* at 8-9, 13.

Plaintiff claims that Dr. Kwarteng violated his Eighth Amendment rights by ignoring his complaints of pain and suffering due to the application of rear cuffs and failing to renew his medical pass to prevent the use of such allegedly painful restraints.  (Doc. No. 9, p. 10.)  With respect to his Eighth Amendment claim, Plaintiff sues Dr. Kwarteng in his individual capacity. *Id.* at 11.

Plaintiff claims that Dr. Kwarteng also violated his ADA and RA rights by intentionally discriminating against him solely by reason of his physical disabilities in contributing to the denial of access to the diabetic clinic and by failing to make a reasonable accommodation in the

form of Plaintiff's requested front cuff with a belt. *Id.* With respect to his ADA and RA claim, Plaintiff sues Dr. Kwarteng in his official capacity. *Id.*

Plaintiff seeks to hold Director Collier and Warden Holmes liable for ADA and RA violations committed by their subordinates under a theory of *respondeat superior*. (Doc. No. 9, pp. 11-12.) Plaintiff sues Director Collier and Warden Holmes in their official capacities with respect to his ADA and RA claims. *Id.* at 12.

Lastly, Plaintiff claims that Captain Nino, Sergeant Rivas, Officer Herrera, Dr. Kwarteng, and Warden Holmes conspired against Plaintiff by entering into an agreement to violate Plaintiff's ADA and RA and constitutional rights, in violation of §§ 1983, 1985, and 1986. (Doc. No. 1, pp. 7-8; Doc. No. 1-1, pp. 3-4, 6-7; Doc. No. 9, p. 12.) To support his civil conspiracy claims, Plaintiff alleges that Captain Nino, Sergeant Rivas, and Officer Herrera discussed, while Plaintiff was on the ground, whether to leave the rear cuffs on him; that Warden Holmes "somewhat condoned" their "misconduct;" and that Dr. Kwarteng "created the entire mess." (Doc. No. 9, p. 12.)

Plaintiff requests relief of the "[a]ggregated dollar amount of $250,000 for compensatory, punitive, mental anguish, stress, fear, humiliation . . . ." (Doc. No. 1, p. 8.) Further, Plaintiff requests "Pre/post Judgement interest, Attorney fees and taxes." *Id.*

### C. Legal standard.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable.  *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

### D. *Discussion.*

#### 1. *Plaintiff's § 1983 claims.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under § 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

> **a. *Plaintiff's excessive force claims against Officer Herrera, Captain Nino, and Sergeant Rivas in their individual capacities are frivolous or fail to state a claim upon which relief may be granted.***

Convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force. *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1086); *Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1993).

In considering excessive force claims, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson*, 503 U.S. at 6-7.  The Supreme Court in *Hudson* articulated the following relevant factors to consider when evaluating whether a use of force was excessive: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *See id.* at 7; s*ee also Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (reciting the "well-known *Hudson* factors").

While the "core judicial inquiry" in an Eighth Amendment excessive force allegation is the nature of the force used, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).  A "significant injury" is not a threshold requirement for establishing an excessive-force claim.  *Wilkins*, 559 U.S. 34, 37-38 (2010); *Hudson*, 503 U.S. at 7.  However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9-10).

"[T]he *Hudson* factors do not affect 'the rule that requires proof of injury, albeit significant or insignificant." *Scott v. TDCJ Director*, No. 6:21-CV-00172, 2022 WL 822130, at *5 (E.D. Tex. Feb. 2, 2022), *adopted*, 2022 WL 822019 (E.D. Tex. Mar. 17, 2022) (citing *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).  While the Fifth Circuit no longer requires significant injury for excessive force claims, the injury must still be more than *de minimis to show that the prison official used excessive force.  See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (recognizing that abrasions, bruises, bloody urine, and high blood pressure and

heart rate are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v. City of West Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries).

Plaintiff's allegations, accepted as true for purposes of screening, fail to indicate that Officer Herrera's actions in rear-cuffing Plaintiff on July 28, 2022 constituted an unconstitutional use of force.  While Officer Herrera was potentially aware of Plaintiff's physical issues related to his lateral pelvic tilt and "Chronic Pain Syndrome," this does not also mean that he was aware of any necessary restriction on rear-cuffing stemming from those medical issues as, at the time, Plaintiff did not have a medical pass stating that such a restriction was necessary. In addition, knowledge that a person has a lateral pelvic tilt and chronic pain does not put someone on notice of any shoulder, arm, or wrist issues.  Further, Plaintiff offers nothing to suggest that Officer Herrera acted maliciously or sadistically in applying the rear cuffs on Plaintiff.  Plaintiff acknowledges that, at the time he was being escorted to the diabetic clinic on July 28, he did not have a medical pass requiring security officials like Officer Herrera to cuff him in the front.  Plaintiff also makes no allegations to suggest that Officer Herrera handcuffed Plaintiff in an unusually rough or inappropriate manner, or that the cuffing was performed in a manner that was "repugnant to the conscience of mankind."  *Wilkins*, 557 U.S. at 37-38; *see Jones v. Taylor*, No. 2:14-CV-428, 2015 WL 5793721, at *9 (S.D. Tex. Oct. 1, 2015) (Ellington, M.J.) (finding no evidence that officer acted maliciously or sadistically when applying handcuffs as "there was no twisting, pulling, or jerking of [the inmate's] arms").

In addition, Plaintiff's allegations reflect that he suffered only *de minimis* injuries as a result of Officer Herrera's conduct.  The Fifth Circuit has held that simply placing handcuffs on an offender too tightly alone does not amount to excessive force.  *Templeton v. Jarmillo*, 28

F.4th 618, 622 (5th Cir. 2022); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  Minor

or incidental injuries associated with the use of handcuffs or restraints are considered *de minimis*

and do not give rise to a constitutional claim of excessive force.  *See Juarez v. Pizana*, No. 3:17-

CV-368, 2018 WL 3846039, at *6 (W.D. Tex. June 29, 2018) (citing *Freeman v. Gore*, 483 F.3d

404, 417 (5th Cir. 2007)).

Here, Plaintiff alleges that, as a result of being rear-cuffed on July 28 by Officer Herrera,

he "sustained injuries to the wrist due to tight cuffs, severe hip, shoulder, lower neck pain, back

and knee pain due to bending to have the rear-cuffs applied inside [his] cell."  (Doc. No. 9, p. 4.)

Plaintiff further alleges that ligature impressions on both wrists caused severe numbness

and that he was unable to write for several days due to nerve pain and excess pain to his lower

neck, shoulder, back, hip, and knee.  *Id.*  Plaintiff complains that the ligature impressions

required medical treatment.  *Id*.  Plaintiff allegedly submitted several sick call requests, but did

not receive any such medical treatment.  *Id.*

The factual scenario described by Plaintiff stands in contrast to *Heitschmidt v. City of*

*Houston*, 161 F.3d 834 (5th Cir. 1998).  In that case, detainee Heitschmidt was subjected to a

long and painful handcuffing.  Heitschmidt specifically alleged that he had been painfully

handcuffed for more than four hours, resulting in serious and permanent injury requiring medical

treatment.  *Id.* at 836, 839-40. The Fifth Circuit held that Heitschmidt had "conceivably stated"

an excessive force claim based on the lengthy application of painful restraints.  *Id.* at 839-40.

This case is far different: the allegations presented in this case do not arise to the level of

those in *Heitschmidt*.  Plaintiff was handcuffed solely for the purpose of being escorted to the

diabetic clinic; he was not rear-cuffed for a substantial amount of time, and he certainly does not

allege that he was rear-cuffed for four hours like the plaintiff in *Heitschmidt*.  Additionally,

Plaintiff's allegations reflect that any injuries Plaintiff may have suffered from Officer Herrera's handcuffing were temporary in nature and not permanent, as he was able to write several days after the incident, once the numbness, pain, and wrist issues had abated.  Finally, Plaintiff does not allege that Officer Herrera acted out of malice.  Plaintiff, therefore, has not stated a plausible excessive force claim against Officer Herrera because he alleges no more than *de minimis* injuries resulting from the rear-cuffing, and he does not allege Officer Herrera had the requisite malice in handcuffing him.  *Compare Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) ("acute contusions of the wrist" and "psychological injury from being handcuffed were *de minimis* and insufficient to amount to excessive force) *and Glenn*, 242 F.3d at 314 (plaintiff failed to state an excessive force claim where, other than applying the handcuffs too tightly and causing her right wrist to swell, she alleged nothing to suggest the officer touched her or acted with malice) *with Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (plaintiff provided summary judgment evidence showing her injuries were more than *de minimis* where she required four surgeries and suffered from long-term nerve damage as a result of the officer applying the handcuffs too tightly).

Plaintiff sues Captain Nino and Sergeant Rivas under a theory of bystander liability for failing to order Officer Herrera to release the rear cuffs, or to release the rear cuffs themselves. (Doc. No. 9, pp. 6-9.)  A prison official's failure to intervene in another's use of excessive force may violate the Eighth Amendment.  *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  A prison security official, therefore, "may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to

act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citation and internal quotation marks omitted).

However, bystander liability arises only where the plaintiff alleges and proves another officer's use of excessive force. *See Kitchen v. Dall. Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014), *abrogated on other grounds*, *Kingsley v. Hendrickson*, 576 U.S. 389, 389 (2015). As discussed above, Plaintiff has failed to allege that Officer Herrera used force against Plaintiff in violation of his Eighth Amendment rights. Thus, it follows that no bystander liability claim exists against either Captain Nino or Sergeant Rivas. *See Walker v. City of Houston*, No. 4:19-cv-04454, 2022 WL 4227259, at *8 (S.D. Tex. Sept. 13, 2022) (Eskridge, J.) (bystander liability claims fail when the underlying excessive force claim is determined to be without merit).

Accordingly, the undersigned recommends that Plaintiff's excessive force claims against Officer Herrera, Captain Nino, and Sergeant Rivas in their individual capacities be dismissed with prejudice as frivolous.

> **b.** **The Court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Dr. Kwarteng and dismiss with prejudice Plaintiff's Eighth Amendment deliberate indifference claims against Officer Herrera, Captain Nino, and Sergeant Rivas in their individual capacities as frivolous or for failure to state a claim upon which relief may be granted.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)). An Eighth Amendment violation

occurs when a prison official acts with deliberate indifference to an inmate's health and safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong.  *Farmer*,

511 U.S. at 839.  Under the objective prong, the inmate "must first prove objective exposure to a

substantial risk of serious harm."  *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at

*3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).

To prove the subjective prong of the deliberate indifference test, the inmate "must establish that

the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety,

and yet consciously disregarded the risk."  *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795,

at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing

*Farmer*, 511 U.S. at 397; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  A prison

official's knowledge of substantial risk may be inferred if the risk was obvious.  *Easter v.

Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Prison officials are liable for failure to provide medical treatment if they are deliberately

indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs,

but it may also be shown when prison officials have denied an inmate prescribed treatment or

have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at

104-05.  In the context of medical treatment, the prisoner must show "that prison officials

refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted).  Delay in treatment may

be actionable under § 1983 only if there has been deliberate indifference and the delay results in

substantial harm.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk").  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### i. The Court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Dr. Kwarteng in his individual capacity as frivolous and for failure to state a claim for which relief may be granted.

Plaintiff claims that Dr. Kwarteng violated his Eighth Amendment rights by ignoring his complaints of pain and suffering due to the application of rear cuffs, failing to renew his medical pass in a timely manner to prevent the use of such painful restraints, and contributing to a one-time denial of access to medical services, "namely the Diabetic clinic."  (Doc. No. 9, pp. 10-11.) Plaintiff's allegations reflect that he suffers from numerous disabilities associated with his lateral pelvic tilt, "Chronic Pain Syndrome," diabetes, and arthritis.  *Id.* at 1.  According to Plaintiff, Dr. Kwarteng became aware of Plaintiff's physical disabilities in November 2021.  Plaintiff's allegations further reflect that: his medical pass requiring him to be handcuffed in front expired

on June 24, 2022; through sick call requests and grievances,[2] Plaintiff immediately sought to renew his medical pass with Dr. Kwarteng; but that Dr. Kwarteng did not respond until July 29, 2022, one day after the alleged incident with Officer Herrera, with an updated medical pass for "[n]o short cuffs behind back." *Id.* at 4, 10-11.

"Prisoners have no constitutional right to receive the medical care they believe most appropriate, including the furnishing of such medical passes as they may desire." *Whitlock v. Stephens*, No. 5:14CV94, 2016 WL 7168029, at *4 (E.D. Tex. Oct. 5, 2016), *adopted*, No. 5:14CV94, 2016 WL 7177853 (E.D. Tex. Dec. 8, 2016) (citing *Patterson v. Stanley*, 595 F. App'x. 423 (5th Cir., March 3, 2015)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference . . . ." *Sowell v. Barber*, No. CV H-18-4499, 2021 WL 5987090, at *3 (S.D. Tex. Dec. 16, 2021) (Rosenthal, C.J.) (citing *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013)). "Neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived but did not is sufficient to establish deliberate indifference." *Patterson v. Stanley*, 595 F. App'x 423, 424 (5th Cir. 2015) (*per curiam*) (citing *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)) (where failure to renew prisoner's medical passes for sunglasses and anti-embolism stockings did not amount to deliberate indifference to serious medical needs). Disagreement

---

[2]  Although the undersigned takes Plaintiff's allegations in the light most favorable to him, it is clear that the grievances could not have alleged more than a request for the medical pass to be renewed.  This is because Plaintiff has not alleged that any other rear-cuffing incident occurred prior to the July 28, 2022 incident that caused Plaintiff any sort of pain.  To the extent that Plaintiff alleges that he requested a restriction on rear=cuffing and that Dr. Kwarteng ignored or denied that request, such an allegation would amount to nothing more than Plaintiff's disagreement with Dr. Kwarteng's medical treatment decision not to issue a medical pass.  And even if Dr. Kwarteng intentionally disregarded these grievances, Plaintiff again fails to show that he suffered any greater-than-*de minimis* injury from Dr. Kwarteng's actions.  Thus,Plaintiff has not alleged an Eighth Amendment violation against Dr. Kwarteng.

with treatment provided does not state an Eighth Amendment violation.  *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 346).

As discussed above, Plaintiff does not allege more than *de minimis* physical injury.  For this reason alone, the Court should dismiss Plaintiff's deliberate indifference claim against Dr. Kwarteng.  *See Geiger*, 404 F.3d at 374 n.10; 42 U.S.C. § 1997e(e); *Minchey v. LaSalle Sw. Corr.*, No. 3:20-CV-1066-E-BN, 2020 WL 3065937, at *2 (N.D. Tex. May 20, 2020), *adopted*, No. 3:20-CV-1066-E-BN, 2020 WL 3064803 (N.D. Tex. June 8, 2020) ("A *pro se* prisoner plaintiff in a case filed under 42 U.S.C. § 1983 must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages – regardless of the nature of the claim.").  Further, Plaintiff's allegations, accepted as true for purposes of screening, suggest that Dr. Kwarteng's failure to address the issue of Plaintiff's medical pass in a timely manner alleges, at most, negligence.  Plaintiff's allegations overall reflect that although Dr. Kwarteng may have been aware of Plaintiff's numerous physical ailments and Plaintiff's desire for a medical pass preventing Plaintiff from being rear-cuffed, Plaintiff does not plead any more-than-conclusory facts showing how Dr. Kwarteng ignored any complaints, refused to treat him, or otherwise evinced a wanton disregard for his medical needs.  *Sowell v. Barber*, No. CV H-18-4499, 2021 WL 5987090, at *2 (finding no Eighth Amendment violation where a doctor did not prescribe crutches or require that Sowell be assigned to a bottom bunk).

Further, a general allegation that Dr. Kwarteng ignored Plaintiff's complaints of pain and suffering does not show that Plaintiff complained to Dr. Kwarteng about any pain and suffering specifically arising from being rear-cuffed.  Plaintiff's alleges that "Dr. Kwarteng ignored [his] complaints, of pain and suffering due to the excessive force by security . . . ."  (Doc. No. 9, p.

10.)  Yet, that lone alleged incidence of "excessive force" occurred on July 28, 2022, *id.* at 3, and Plaintiff states that Dr. Kwarteng gave Plaintiff a medical pass on July 29, – the following day. *Id*. at 11.  Thus, Plaintiff's alleged facts show that rather than ignoring Plaintiff's complaints of pain resulting from rear-cuffing, Dr. Kwarteng responded promptly, issuing a medical pass within 24 hours of Plaintiff's complaint.  This is clearly not deliberate indifference to Plaintiff's alleged pain.

Finally, Plaintiff does not offer any details or facts to support his claim that Dr. Kwarteng contributed to any denial of access to medical services.  Thus, that allegation is threadbare, conclusory, and fails to state a claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Additionally, Plaintiff fails to plausibly allege that a doctor's failure to renew a medical pass amounts to a constitutional violation.  *See Whitlock*, 2016 WL 7168029, at *4.  At most, Plaintiff simply alleges his disagreement with Dr. Kwarteng's decision not to issue a medical pass (if there was such a decision), and such disagreement does not establish a violation of the Eighth Amendment.  *See Gobert*, 463 F.3d at 346.  Because Plaintiff has not stated a plausible deliberate indifference claim against Dr. Kwarteng, the undersigned recommends that this claim be dismissed.

### ii.  Plaintiff's deliberate indifference claims against Officer Herrera, Captain Nino, and Sergeant Rivas in their individual capacities should be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

Plaintiff further claims that Officer Herrera, Captain Nino, and Sergeant Rivas violated his Eighth Amendment rights by interfering with his prescribed insulin treatment at the diabetic clinic on July 28, 2022, causing Plaintiff to experience hyperglycemia.  (Doc. No. 9, pp. 7-9.) Plaintiff alleges that he is diabetic.  *Id.* at 1.  Plaintiff's allegations reflect that on that day Officer

Herrera was escorting Plaintiff to the diabetic clinic for an insulin injection. *Id.* at 3. After Plaintiff allegedly fell to the ground in pain due to the application of the rear cuffs, Captain Nino and Sergeant Rivas appeared on the scene, at which time Captain Nino allegedly ordered Plaintiff either to get up and walk while rear-cuffed or get a wheelchair but remain in his current custody level with a disciplinary action brought against him. *Id.* at 6. Plaintiff chose the first option and apparently was then taken to the diabetic clinic while rear cuffed. *Id.* at 6.

Diabetes is a serious medical condition. Nevertheless, when a prisoner is suffering from a condition such as diabetes and is "receiving adequate long-term care, not every missed insulin injection … automatically poses a substantial health risk." *Bailey v. Harris*, No. 3:13-CV-151, 2017 WL 773657, at *6 (S.D. Tex. Feb. 27, 2017) (Hanks, J.) (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). Plaintiff's allegations suggest that he regularly visits the diabetic clinic to receive insulin injections for his diabetic condition.[3] (Doc. No. 9, pp. 1, 3.) While indicating that he suffered symptoms of hyperglycemia after missing his insulin injection that morning, Plaintiff provides no specific facts to show that these symptoms were serious or that he was at substantial risk of serious harm after missing only one injection due to the actions of Officer Herrera, Captain Nino, or Sergeant Rivas.[4] Plaintiff's allegations, even accepted as true for purposes of screening, fail to state that he was objectively exposed to a substantial risk of

---

[3] Plaintiff provided more details about the long-term treatment for his diabetes in a separate prisoner civil rights action. *See Thomas v, Anciso, et al.*, No. 2:22-CV-252 (S.D. Tex. 2022). Plaintiff alleged in that case that he has been prescribed the following medications for his Type II diabetes while in custody at the McConnell Unit: 1000 mg of Metformin twice daily, Glipizide tablets once daily or more as needed for hyperglycemia, and insulin injections twice daily with more insulin doses per a "sliding scale." *Id.*; Doc. No. 8, p. 13. The undersigned takes judicial notice of these facts regarding the care for Plaintiff's diabetes.

[4] Plaintiff notes that despite Plaintiff claiming that he chose to go to the diabetic clinic while rear-cuffed rather than be put in a wheelchair and remain at his current custody level, *see* Doc. No. 9, p. 6, Plaintiff also claims that he was not able to go to the diabetic clinic. These facts are clearly inconsistent. Regardless, however, Plaintiff cannot state a claim for relief under either set of facts.

serious harm.  Further, these facts demonstrate that Plaintiff has not alleged facts indicating that any missed insulin injection rose above the level of *de minimis* injury.  For this reason alone, Plaintiff's deliberate indifference claims against these defendants should be dismissed.  *See Geiger*, 404 F.3d at 374 n.10; 42 U.S.C. § 1997e(e).

Even if Plaintiff could show that missing one insulin injection exposed him to a substantial risk of harm, Plaintiff fails to allege sufficient facts to indicate that either Officer Herrera, Captain Nino, or Sergeant Rivas had actual knowledge of a substantial risk of serious harm to Plaintiff and then disregarded such risk by failing to take proper remedial measures. Plaintiff alleges no facts to show that any of these defendants was aware that Plaintiff was suffering any complications due to his diabetic condition at the time he was being escorted to the diabetic clinic.  Even if Plaintiff had been displaying diabetic symptoms, Plaintiff's allegations otherwise fail to suggest that such symptoms were readily apparent as a medical emergency to Officer Herrera, Captain Nino, and Sergeant Rivas: these defendants all work as security officers, and Plaintiff does not allege that any has received formal medical training.  *See Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018) ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."); *Rundles v. Arowosafe*, No. 6:19-CV-00014, 2020 WL 7054239, at *4 (E.D. Tex. Aug. 20, 2020), *adopted*, 2020 WL 5939051 (E.D. Tex. Oct. 7, 2020) (rejecting inmate's deliberate indifference claim because he did not allege that officer "had the medical training necessary to subjectively recognize inmate's symptoms–feeling very ill, having a fast heartbeat, being overheated, and chest hurting–as a medical emergency").

The undersigned concludes, therefore, that Plaintiff fails to satisfy the subjective prong of the deliberate indifference test because he has not pled that either Officer Herrera, Captain Nino,

or Sergeant Rivas had actual knowledge to infer a serious risk of substantial harm to Plaintiff.  At best, that these defendants could (or even should) have perceived a risk to Plaintiff in connection with missing an insulin injection for his diabetes is insufficient "to satisfy the high bar of a deliberate indifference claim."  *Rundles*, 2020 WL 7054239, at *4; *see also Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) ("It is not enough to identify a significant risk that the official should have perceived but did not.") (internal quotations and citation omitted).

In sum, Plaintiff has failed to satisfy both the objective and subjective components of his deliberate indifference claims against Officer Herrera, Captain Nino, and Sergeant Rivas with regard to the alleged incident on July 28, 2022.  Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claims against these defendants in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### c. Plaintiff's conspiracy claims against Captain Nino, Sergeant Rivas, Officer Herrera, Dr. Kwarteng, and Warden Holmes in their individual capacities are frivolous.

To state a claim for conspiracy under § 1983, a plaintiff must allege that defendant "had 'an agreement to commit an illegal act which resulted in the plaintiff's injury.'"  *Hay v. City of Irving*, 893 F.2d 796, 799 (5th Cir. 1990) (quoting *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982)).  With regard to any claim that defendants have conspired under § 1983 to harm him, a plaintiff must plead specific, non-conclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights.  *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004); *see also Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (explaining that bald allegations that a conspiracy existed are insufficient and that plaintiffs asserting conspiracy claims under § 1983 must plead the operative facts on which their

claim is based); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (concluding that conclusory allegations of a conspiracy will not suffice).

Plaintiff claims that Captain Nino, Sergeant Rivas, Officer Herrera, Dr. Kwarteng, and Warden Holmes conspired against Plaintiff by entering into an agreement to violate Plaintiff's ADA, RA, and constitutional rights, in violation of §§ 1983, 1985, and 1986.  (Doc. No. 1, pp. 7-8; Doc. No. 1-1, pp. 3-4, 6-7; Doc. No. 9, p. 12.)  Plaintiff alleges that: Captain Nino, Sergeant Rivas, and Officer Herrera discussed (while Plaintiff was on the ground) whether to leave the rear cuffs on him; that Warden Holmes "somewhat condoned" their "misconduct;" and that Dr. Kwarteng "created the entire mess."  (Doc. No. 9 at 12.)  Plaintiff's allegations consist of only conclusory allegations and his speculative belief that these defendants actually entered into an agreement to violate his rights.  *See Easter v. City of Dallas Probate Division*, No. 3:21-CV-0860, 2022 WL 2975349, at *8 (N.D. Tex. June 27, 2022), *adopted*, 2022 WL 2972595 (N.D. Tex. July 27, 2022) (rejecting § 1983 conspiracy claim where allegations were "totally speculative and [did] not show an agreement of any kind between the two defendants").  Plaintiff's allegations of a conspiracy, therefore, are insufficient to state a § 1983 claim.

Plaintiff has further failed to state an actionable conspiracy claim under §§ 1985 and 1986.  Section 1986 of Title 42 "provides a cause of action for 'wrongs conspired to be done' as set forth in 42 U.S.C. § 1985."  *Davis v. Maginnis*, No. H-21-2278, 2021 WL 6340157, at *2 (S.D. Tex. Dec. 6, 2021) (Hittner, J.).  To state a claim for the deprivation of civil rights as set forth in § 1985(3), a complaint must allege the following: "(1) a conspiracy of two or more person; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or

property or deprived of any right or privilege of a citizen of the United States." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (citation omitted). "Essential to the claim, however, is that the conspiracy be motivated by racial animus." *Id.* (citations omitted); *see also McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 446 (5th Cir. 2006) (*per curiam*).

Plaintiff does not allege any specific facts suggesting a race-based conspiracy or animus against him. Plaintiff, therefore, cannot state a valid claim for relief under § 1985(3). Because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim also fails. *See Davis*, 2021 WL 6340157, at *2 (citing *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)).

Accordingly, the undersigned recommends that Plaintiff's conspiracy claims under §§ 1983, 1985, and 1986 be dismissed with prejudice against Captain Nino, Sergeant Rivas, Officer Herrera, Dr. Kwarteng, and Warden Holmes in their individual capacities, as frivolous.

### 2. Plaintiff's ADA and RA claims.

#### a. Legal standard.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while

the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  Therefore, even though Plaintiff has segregated the ADA and RA claims from one another in his pleadings, the undersigned analyzes his ADA and RA claims as though they were raised in a single claim.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

   To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability.  *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).  A qualifying disability is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(a)(1).

   The definition of "disability" is to be given broad construction.  *See* 42 U.S.C. § 12102(4)(A).  To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability."  *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original); *see also Davidson v. Tex. Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (*per curiam*) (applying similar standard for ADA claim).  To recover money damages, more is required: Plaintiff must also show that the discrimination was intentional.  *Miraglia*, 901 F.3d at 574.

   A failure to accommodate claim must offer "proof that 'the disability and its consequential limitations were known by the [entity providing public services] . . . .  Mere

knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . *as a result* of that disability.'" *Windham*, 875 F.3d at 236 (citations omitted, bracketed text in original, emphasis in original). Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Id.* (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

The burden is on the plaintiff to "'specifically identify the disability and resulting limitations'" to the service provider. *Windham*, 875 F.3d at 237 (quoting *Taylor*, 93 F.3d at 165). This is because the ADA "does not require clairvoyance." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). "[K]nowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238. The burden is also on the plaintiff to request an accommodation in direct and specific terms. *Id.* at 237. If a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, the resulting limitation, and the necessary reasonable accommodation all were "open, obvious, and apparent" to the public entity's relevant agents. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).

### b.  *Plaintiff cannot bring ADA and RA claims against Officer Herrera in his individual capacity.  This claim should be dismissed.*

Plaintiff sues Officer Herrera in his individual capacity with respect to his ADA and RA claims.  (Doc. No. 9, p. 6.)  A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012); *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted*, 2022 WL 2440776 (E.D. Tex. Jul 5,

2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021). Accordingly, the undersigned recommends that Plaintiff's ADA and RA claims against Officer Herrera in his individual capacity be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### c. Plaintiff cannot recover his requested relief (compensatory damages) from Captain Nino, Sergeant Rivas, Warden Holmes, Dr. Kwarteng, or Director Collier in their official capacities.

As established, Plaintiff has not alleged facts related to the rear-cuffing or missed insulin injection rising above *de minimis* injury. For this reason alone, the Court should dismiss Plaintiff's ADA and RA claims against these defendants. *See Geiger*, 404 F.3d at 374 n.10; 42 U.S.C. § 1997e(e).

Nevertheless, the undersigned will address the merits of Plaintiff's ADA and RA claims below. Notably, the allegations against Captain Nino, Sergeant Rivas, Dr. Kwarteng, Warden Holmes, and Director Collier also do not make a showing of any intentional discrimination. For this reason as well, Plaintiff cannot recover on his claims for compensatory damages. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) (to recover on a claim for compensatory damages under the ADA or the RA, a plaintiff must make "a showing of intentional discrimination").

### d. The Court should dismiss Plaintiff's ADA and RA claims against Captain Nino, Sergeant Rivas, Warden Holmes, Dr. Kwarteng, and Director Collier in their official capacities.

With the exception of Officer Herrera, Plaintiff brings his ADA and RA claims against each defendant in his official capacity. The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *adopted*, 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. §

12131(1)(a)-(b)).  Further, the Fifth Circuit has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently shows that he suffers from physical impairments that greatly limit his daily life activities, and that, at least for purposes of this screening, he is a "qualified individual with a disability."[5]  *See Peña Arita v. County of Starr, Tex.*, No. 7:19-CV-00288, 2020 WL 5505929, at *5 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (in evaluating a motion to dismiss, the court explains that it cannot say definitely whether the individual suffered a disability, but that the court's role is to "interpret Plaintiffs' complaint as a whole and grant Plaintiffs every reasonable inference to determine whether Plaintiffs state a plausible claim for relief").

Plaintiff alleges that Captain Nino and Sergeant Rivas, despite being aware of Plaintiff's lateral pelvic tilt and "Chronic Pain Syndrome," denied him a reasonable accommodation by refusing his request on July 28, 2022, to be cuffed in front with a belt while being escorted to the diabetic clinic.  (Doc. No. 9, pp. 7-8.)  Plaintiff also alleges that Dr. Kwarteng, despite being aware of Plaintiff's disabilities, denied him a reasonable accommodation by failing to renew his

---

[5]  Plaintiff claims that he has been diagnosed with a lateral pelvic tilt, "Chronic Pain Syndrome," diabetes, and arthritis.  (Doc. No. 9, p. 2.)  According to Plaintiff, his lateral pelvic tilt was caused by a leg-length discrepancy.  *Id.*  In addition to construing the pleadings liberally, the undersigned also reads the definition of "disability" broadly.  "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population."  *Peña Arita*, 2020 WL 5505929, at *4 (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

expired medical pass in a timely manner, resulting in security officials' front cuffing Plaintiff. *Id.* at 11.  According to Plaintiff, the actions of Captain Nino, Sergeant Rivas, and Dr. Kwarteng caused him additional pain as well as denied him access to medical services at the diabetic clinic. *Id.* at 5, 7, 9, 11.  With respect to his ADA and RA claims, Plaintiff sues Warden Holmes and Director Collier under a theory of *respondeat superior*.  *Id.* at 11-12.

Plaintiff's allegations, even accepted as true for purposes of screening, fail to state any viable ADA or RA claims, because Plaintiff fails to explain how any disability created any limitation or impairment to his access to TDCJ services.  Additionally, Plaintiff never informed prison officials of any limitation or impairment caused by any disability.  Any resulting limitation and necessary reasonable accommodation were not "open, obvious, and apparent."

First, Plaintiff fails to allege how any disability actually limited or impaired his ability to avail himself of any TDCJ program, service, or activity.  In short, Plaintiff has not alleged that he has an "unequal ability to use and enjoy the facility" – that is, TDCJ programs, services, or activities – "compared to individuals who do not have a disability."  *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018).  Accordingly, his ADA and RA claims are subject to dismissal.  *Cf. Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (plaintiff failed to show how TDCJ's refusal to give him dentures prevented him from accessing TDCJ services; ADA and RA claims dismissed).

Second, Plaintiff's claims are also subject to dismissal because he makes no allegation that he ever told any prison official that he was limited or impaired from availing himself of any TDCJ program, service, or activity.  Although Plaintiff alleges in his complaint that his access to the diabetic clinic was impaired by pain arising from the July 28 incident, *e.g.*, Doc. No. 9, pp. 7-8, he fails to allege that he informed any prison official as much prior to filing this lawsuit.

29 / 34

Plaintiff does not allege in his complaint (or his more definite statement) that he informed any prison official about any impairment to his ability to avail himself of any TDCJ program, service, or activity after he was allegedly injured from the rear-cuffing on July 28.

Here, similarly, as discussed in his more definite statement, Plaintiff complained that he was in pain and that he "needed" a restriction for front-cuffing.  But Plaintiff did not tell anyone that (or how) the pain was hampering him from accessing the diabetic clinic or any other TDCJ program or service.  Plaintiff states that he submitted sick call requests and grievances, but those communications were sent in June 2022, long before the July 28 incident that allegedly caused Plaintiff's denial of use of the diabetic clinic, and Plaintiff does not even allege that he complained of any inability to access the diabetic clinic or any other TDCJ services in those sick call requests or grievances.  *See* Doc. No. 9, pp. 4, 10.  And there is no indication that Plaintiff ever notified any prison official of any such limitations prior to filing this lawsuit.  Plaintiff also never explains how not having a restriction on rear-cuffing gave him less meaningful access to the diabetic clinic before the July 28 incident, only stating that he "could not make it to the clinic due to excessive force by rear cuffs." (Doc. No. 9, pp. 8-9.)  As established above, there was no excessive force applied to Plaintiff.  In addition, to the extent that any resulting pain arising from the rear-cuffing prevented Plaintiff from going to the diabetic clinic on one occasion, this clearly is not enough to state an ADA or RA claim.

In short, while prison officials may have known about Plaintiff's lateral pelvic tilt and "Chronic Pain Syndrome," there is no allegation that they knew of any limitation or impairment that condition may have caused in relation to Plaintiff's desire for cuffing restrictions or his brief alleged lack of access to the diabetic clinic.  Plaintiff therefore fails to allege a viable ADA or RA claim, because, as the *Windham* court stated, "knowledge of a disability is different from

knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." 875 F.3d at 238.

Finally, Plaintiff may overcome his failure to allege actual knowledge of the resulting limitation from his disability only if he shows that "both his resulting limitation and necessary reasonable accommodation were open, obvious, and apparent to [TDCJ's] relevant agents." *Lee*, 2020 WL 7388602, at *8 (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 318 (5th Cir. 2020)). They were not. Plaintiff writes in his more definite statement that he made his desire for a rear-cuffing restriction known to Dr. Kwarteng prior to being rear-cuffed on July 28.[6] (Doc. No. 9, pp. 4, 10.) After Plaintiff's alleged injuries stemming from the July 28 incident, Dr. Kwarteng did renew Plaintiff's restriction. *Id*. at 4, 10-11. Regarding Captain Nino and Sergeant Rivas, Plaintiff merely alleges that they knew about Plaintiff's lateral pelvic tilt and "Chronic Pain Syndrome." *Id*. at 7-8.

Plaintiff's allegations, construed liberally, indicate that prison officials knew of Plaintiff's physical disabilities. Any resulting limitation on Plaintiff's ability to avail himself of any TDCJ program, service, or activity, however, is not apparent, and Plaintiff does not plausibly allege otherwise. At most, Plaintiff alleges his belief that his need for a rear-cuffing restriction was apparent, but he does so without any elaboration: he does not explain how his lateral pelvic tilt or general chronic pain would create an obvious limitation relating to the proper positioning of his shoulder, arm, and wrist in handcuffs. And relating to any allegations regarding Plaintiff's

---

[6] The undersigned notes, however, that this "notice" may not have been notice to Dr. Kwarteng at all. Plaintiff alleges that he sent sick call requests, which do not go to Dr. Kwarteng. Rather, they go to prison staff, to determine if Plaintiff should visit the doctor. Grievances, meanwhile, also do not go to the doctor directly, but are typically responded to by officers. (Doc. No. 9, pp. 4, 10.) Because Dr. Kwarteng might have been alerted to Plaintiff's request for the rear-cuffing restriction through the grievance procedure, the undersigned takes as true Plaintiff's assertion that Dr. Kwarteng was on notice of his request for rear-cuffing.

alleged denial of access to the diabetic clinic, those allegations are threadbare and conclusory. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  And, as mentioned above, Plaintiff failed to state a viable claim because his injuries were *de minimis*.  Therefore, he cannot recover any compensatory damages or state claims against Dr. Kwarteng, Captain Nino, or Sergeant Rivas. As such, any allegations against Warden Holmes and Director Collier under a theory of *respondeat superior* are also subject to dismissal, because there are no unconstitutional actions by their subordinates for which Warden Holmes and Director Collier can be held accountable under § 1983.  Accordingly, Plaintiff's ADA and RA allegations should be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

### e.  *Additionally, Plaintiff's allegations against Dr. Kwarteng are merely a disagreement with his medical treatment.  They do not state a viable ADA or RA claim.*

Additionally, Plaintiff's contentions fail to state an ADA or RA claim upon which relief may be granted because his allegations against Dr. Kwarteng merely reflect disagreement with his medical treatment.  Such disagreement does not constitute a viable claim, so Plaintiff's ADA and RA claims should be dismissed.

The ADA and RA do not establish a "standard of care" for medical treatment in prisons. *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.†; *Walls v. Tex. Dep't of Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008).  The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  *Hale*, 8 F.4th at 404 n.† (citing *Nottingham*, 499 F. App'x at 377).  And the ADA does not create a remedy for medical malpractice or medical negligence.  *Cadena*, 946 F.3d at 726; *Bryant*, 84 F.3d at 249.  A plaintiff cannot bring an ADA or RA claim simply by restating a claim of denial of medical care, and a plaintiff's disagreement with medical treatment likewise does not state a claim under the ADA or

RA. *See Whetstone v. Hall*, No. 4:17CV158-JMV, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

In this case, Plaintiff's allegations against Dr. Kwarteng simply state a disagreement with his medical treatment. The timeline of events in this case demonstrates this. Prior to Plaintiff's alleged injuries from rear cuffing on July 28, 2022, he did not have any restriction on cuffing, as the restriction had not been renewed. Plaintiff disagrees with the decision to not renew the rear-cuffing restriction, but fails to allege that the decision was based on his disability. And, as emphasized throughout this memorandum and recommendation, Plaintiff did not suffer more than *de minimis* injury from Dr. Kwarteng's failure to renew the restriction. Therefore, his ADA and RA allegations against Dr. Kwarteng are frivolous and fail to state a claim upon which relief may be granted.

Because Plaintiff's ADA and RA allegations against Dr. Kwarteng merely reflect Plaintiff's disagreement with his medical treatment, and not discrimination based on a disability (whether intentional or through a failure to accommodate), his ADA and RA allegations are frivolous and fail to state a claim upon which relief may be granted. The undersigned therefore recommends dismissal of those claims for these reasons as well.

### E. Conclusion and Recommendation.

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned recommends that the Court DISMISS with prejudice Plaintiff's § 1983, § 1985, § 1986, ADA, and RA claims against Defendants as frivolous or for failure to state a claim upon which relief may be granted.

Finally, the undersigned further recommends that this dismissal count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be instructed to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### F. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, and the United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on January 25, 2023.

MITCHEL NEUROCK
United States Magistrate Judge